khs

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| GENERAL TECHNOLOGIES, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| vs. | )   Case No. 08-2266-JAR |
| | ) |
| WATER TECHNOLOGIES, INC., et al. | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER GRANTING DEFENDANT IZZO GOLF, INC.'S
MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on defendant Izzo Golf, Inc.'s Motion for Summary

Judgment (Doc. 18).  Plaintiff General Technologies, Inc. alleges a claim of breach of contract,

contending that defendants Izzo Golf, Inc. and Water Technologies, Inc. ordered water treatment

products and failed to pay.  General Technologies has not filed a response to defendant Izzo

Golf, Inc.'s motion, and the time to do so has expired.[1]  As explained below, defendant's motion

for summary judgment is granted.

**I.      Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[1]*See* D. Kan. R. 6.1(d)(2) (requiring that a response to a dispositive motion be filed within 23 days).
Defendant Izzo Golf filed its summary judgment motion on April 30, 2009.  Plaintiff did not file a response within
the 23-day time period.

of law."[2]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[3]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[4]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[5]

The moving party bears the initial burden of providing the Court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[6]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[7]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[8]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[10]

---

[2]Fed. R. Civ. P. 56(c).

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4]*Id.*

[5]*Id.* at 251–52.

[6]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[8]*Id.*

[9]*Id.*

[10]*See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Under D. Kan. Rule 7.4, a "failure to file a brief or response within the time specified . . .

shall constitute a waiver of the right thereafter to file such brief or response . . . ."[11]  Further, if a

"respondent fails to file a response within the time required . . . the motion will be considered

and decided as an uncontested motion and ordinarily will be granted without further notice."[12]

However, "[i]t is improper to grant a motion for summary judgment simply because it is

unopposed."[13]  This will be the case where the movant fails to make out a prima facie case for

summary judgment.[14]  It is the role of the Court to ascertain whether the moving party has

sufficient basis for judgment as a matter of law.[15]  In so doing, the Court must be certain that no

undisclosed factual dispute would undermine the uncontroverted facts.[16]

## II.    Uncontroverted Facts

All material facts set forth by defendants in this motion for summary judgment are

deemed admitted for the purpose of summary judgment, as plaintiff has failed to specifically

controvert them as required under D. Kan. R. 56.1.

Defendant Water Technologies, Inc. ("Water Tech") is a Delaware corporation.  It

maintains its headquarters, warehouse, and manufacturing facilities in Utah.  Water Tech

conducts business in the western part of the United States under its own name and the trade

names Streamline H2O, Columbia Water, and R&M Water Group.  Water Tech manufactures

---

[11]D. Kan. R. 7.4.

[12]*Id.*

[13]*Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986) (citing *Hibernia Nat'l Bank v. Administracion Ctl. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)).

[14]*Id.* (citations omitted).

[15]*Id.* (citing *Lady Baltimore Foods*, 643 F. Supp. at 407).

[16]*Id.*

and sells water purification systems.  The name R&M Water Group is identified on Water Tech stationary, purchase orders, and checks.  The products that are the subject of litigation with General Technologies, Inc. ("General Tech") are used in filtration systems manufactured by Water Tech.

Defendant Izzo Golf, Inc. ("Izzo") is a Delaware corporation in the business of selling golf clubs, bags, and training equipment in the golf industry.  Its principal place of business is Macedon, New York.  Izzo outsources all of its manufacturing.

In 2002, Water Tech and Izzo arranged an agreement whereby Izzo would perform Water Tech's purchasing, and computer processing functions at Izzo's New York location.  All purchase orders for Water Tech handled by Izzo were submitted in the name of Water Tech or one of its trade names.  Water Tech reclaimed this purchasing function from Izzo in late 2005 or early 2006.  No other Water Tech functions have ever been run out of Izzo's New York location, nor does Water Tech have any direct employees at the New York facility.  Water Tech has no ownership interest in Izzo.  At no time has Water Tech ever been involved in the manufacture or sale of golf merchandise on behalf of Izzo or any other entity.  Similarly, Izzo has never been involved in the purchase of water treatment chemical sales.  It has no ownership interest in Water Tech and has never utilized the trade name R&M Water Group.

In March and April of 2007, Water Tech submitted nine orders for resin and other products to General Tech.  These purchases ranged in price from $17,648.40 to $23,982.00 per order and amounted to $213,515.80 in total.

General Tech responded with invoices for the water treatment chemical orders to R&M Account Payables.  These invoices were forwarded to the attention of Mark Wollschlager, a controller tasked with handling the accounts payable function for Water Tech under the past

4

agreement between Water Tech and Izzo.  The invoices also reference "Mr. Brian Fagan/Izzo Golf" in the carbon copy signature.   Brian Fagan is an Izzo employee who performed the purchasing function for Water Tech pursuant to the past agreement.  Fagan was not involved in any of the purchase orders in dispute in this action.  Izzo never ordered or contracted for the purchase of any resin or products from General Tech, nor did it guaranty the obligations of Water Tech to General Tech.  Water Tech ordered the products and was solely responsible for payment to General Tech for the products described on the invoices.

General Tech contends that Water Tech and Izzo have failed to pay for the orders, claiming breach of contract.  Izzo maintains it has no contractual obligation to the plaintiff for items purchased by Water Tech and moves for summary judgment.

## III.   Discussion

The plaintiff shoulders the burden of proof in showing the existence of the contract alleged in the petition.[17]  In order to form a binding contract there must be a meeting of the minds on all essential terms.[18]  This requires a showing that the parties mutually consented to the terms of the contract.[19]  The existence of a contract may also be demonstrated by satisfying statutory requirements under the Uniform Commercial Code.[20]  Plaintiff General Tech has failed on both accounts to show that it formed a contract with Defendant Izzo.

General Tech's contract claim makes no showing that there was a meeting of the minds on the essential terms of the contract.  Izzo did not purchase or offer to purchase the resin

---

[17]*Steele v. Harrison,* 552 P.2d 957, 963 (Kan. 1976).

[18]*Phillips & Easton Supply Co. v. Eleanor Int'l, Inc.*, 512 P.2d 379, 383 (Kan. 1973).

[19]*Steele v. Harrison,* 552 P.2d at 963.

[20]*See* K.S.A. § 84-2-204.

product sold by General Tech.  The orders were submitted by Water Tech only.  Izzo did not receive or accept the resin products from General Tech.  Izzo and its employees were entirely uninvolved in the purchase and did not order the products at the heart of this litigation.  While Fagan was referenced on the invoices, he was not listed as a party on behalf of Izzo, nor was the invoice submitted "to" Fagan or Izzo.  Indeed, Izzo is in the business of selling golf merchandise.  There is no evidence that Izzo was a party to any alleged agreement with General Tech.  In sum, plaintiff has submitted no evidence that Izzo and General Tech agreed to the terms of the resin purchase.

A contract for the sale of goods may also be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.[21] There is no evidence, however, that shows conduct by both parties which would recognize the existence of a contract.  Izzo did not submit purchase orders for the resin products at the source of this dispute.  It did not receive or possess resin products from General Tech.  There is no evidence that Izzo acted in any manner that recognized the existence of a contract.  In short, there is no genuine issue of material fact about whether Izzo conducted itself in a way that recognized the existence of a contract.

Further, the general rule of law requires privity between the plaintiff and defendant for an action on breach of contract.[22]  There is no evidence of a relationship or connection sufficient to constitute privity between Izzo and General Tech.  While it is possible that General Tech believed it was contracting with Izzo (by directing an invoice to "Mr. Brian Fagan/Izzo Golf")

---

[21] *Id.*.

[22] *Prof'l Lens Plan, Inc. v. Polaris Leasing Corp.*, 675 P.2d 887, 891 (Kan. 1984).

there is no evidence in the record to controvert Fagan's affidavit, in which he states that he was not involved in the purchase.  There is no evidence of communication or documentation tending to establish that Izzo intended to form a contract with General Tech.  The evidence instead shows that Water Tech ordered the resin products from General Tech for its water purification systems.  Because Izzo had no relationship with General Tech,  privity cannot exist between those two parties.

The uncontroverted facts are that Izzo, having no business interest in resin, did not purchase or receive the products listed in General Tech's nine invoices.  Izzo did not conduct itself in any manner sufficient to create a contract, nor did was it in privity with General Tech. In sum, there is no genuine issue of material fact that Izzo did not enter into a contract with General Tech for the purchase of resin product and is not obligated to pay.  Therefore, summary judgment is appropriate in favor of defendant Izzo.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Izzo Golf, Inc.'s Motion for Summary Judgment (Doc. 18) is GRANTED.

**IT IS SO ORDERED**.

Dated:  June 17, 2009

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
